# STATE OF CONNECTICUT *v.* NATHAN SCHULTZ
## (AC 26416)

Schaller, Rogers and Mihalakos, Js.

Argued October 18, 2006—officially released April 24, 2007

*John R. Gulash, Jr.*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. DeJoseph*, assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, J. The defendant, Nathan Schultz, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree by means of a dangerous instrument in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims that (1)

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

the trial court improperly failed to instruct the jury regarding the defense theory of accident or unintended consequence, thereby violating his federal due process rights to a fair trial and to establish a defense, (2) the court improperly failed to charge the jury on his requested lesser included offense instruction regarding assault in the third degree and (3) the statutory scheme mandating a nonsuspendable, five year minimum term of imprisonment violates his rights to equal protection and due process. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, are relevant to the defendant's appeal. In the late evening hours of April 12, 2003, Fabian Hernandez and a group of his friends and acquaintances left a restaurant in Stamford and arrived at Liquid, a nightclub in South Norwalk. Hernandez went to the crowded lower level bar and dance floor area, ordered drinks and began socializing. Sometime thereafter, Hernandez noticed that he and some other people were being splashed by droplets of liquid. Hernandez turned around and saw the defendant, approximately three to four feet away putting his hand inside his glass and flicking the liquid off his fingers into the crowd. Hernandez walked over to the defendant, tapped him on the elbow and informed him that he was "splashing" people. The defendant took his right hand, which was holding a glass, and struck Hernandez in the face, breaking the glass. The glass shattered with such impact that a friend of Hernandez, who was standing approximately one foot away from him at that moment, discovered a piece of glass in his pocket after the altercation. Hernandez' face was injured, and he was covered in blood. The impact caused injury across his cheekbone, down his cheek, on his left temple, underneath his eye and on the top part of his ear.

After he was struck, Hernandez stood motionless for a few seconds before another person hit him in the face and others began punching and grabbing him. Bleeding badly, Hernandez then left Liquid. Hernandez went to a hospital where he received forty-one sutures to close the wound on his face. He was left with permanent facial scarring. The defendant subsequently was arrested.

After a trial to the jury, the defendant was convicted of assault in the first degree. The court sentenced the defendant to eight years imprisonment, execution suspended after five years, and three years probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly failed to instruct the jury as he requested regarding the defense theory of accident or unintended consequence, thereby violating his federal due process rights to a fair trial and to establish a defense.[2] We disagree.

"It is settled law that a defendant who has produced evidence supporting a legally recognized defense is entitled, as a matter of law, to a theory of defense instruction, and that the denial of such an instruction is a violation of due process. . . . [A] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in

---

[2] To the extent that the defendant also asserts a claim of a violation of his due process rights under the Connecticut constitution, he has failed to provide an independent analysis of this issue under the state constitution. See State v. Geisler, 222 Conn. 672, 685, 610 A.2d 1225 (1992) (defendant must provide independent analysis under particular provision of state constitution); see also State v. Pierre, 277 Conn. 42, 74 n.12, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). Consequently, we deem the defendant to have abandoned his state constitutional claim.

substance. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Fagan*, 92 Conn. App. 44, 55, 883 A.2d 8, cert. denied, 276 Conn. 924, 888 A.2d 91 (2005).

The defendant did not dispute that he struck Hernandez. At trial, the defendant testified that he tossed ice cubes from his drink in an attempt to gain the attention of his girlfriend. The defendant testified that three men then approached him, one of them being Hernandez. He claimed that Hernandez grabbed his arm and punched him in the face, and, as a reflexive reaction, he struck Hernandez with his right hand, which was holding a glass. The theory of his defense was that while trying to defend himself from an attack by Hernandez, he reflexively hit Hernandez in the face. The defendant testified that he did not intend any consequences but simply reacted. The defendant requested, at the November 22, 2004 charge conference and in his supplementary request to charge dated November 19, 2004, that the court deliver an instruction regarding accident and unintended consequence.[3]

---

[3] The defendant's proposed instruction was as follows: "You have heard evidence indicating that the injury cause[d] by the defendant was accidentally caused while he was attempting to defend himself from attack. An accidental injury, or unintended consequence, is where an unexpected result arises from an intended act. You may consider whether or not the defendant expected the results of his actions. You may consider whether, under the circumstances of this case, the injury occurred within the course of the defendant reasonably defending himself and whether the injury occurred accidentally or purposefully. The question of whether or not the injury was accidental bears directly upon the element of intent that the state must prove to you beyond a reasonable doubt, but as I have already charged, it is also relevant in connection with your consideration of the instructions

The court declined to give the defendant's requested instruction, concluding that the instructions it intended to deliver regarding intent and self-defense adequately covered the proposed instruction. The court concluded in relevant part: "There was a blow struck with a glass. However momentary, it seems to me that the jury has to decide if the requisite intent was formed in that moment, and the instructions covered the requirement of intent. If the jury fails to find beyond a reasonable doubt the requisite intent for either the offense charged or the lesser included offense, they are instructed that they must acquit. And to the extent that it might go to self-defense, as [defense counsel] has indicated, I think all of the elements of self-defense, including . . . the intent of the defendant and the situation that he faced and whether it was reasonable are covered on the instruction of self-defense, so I'm not going to give the charge as requested on accidental conduct or, I think you called it, unintended consequences."

The court then, during its final instructions to the jury, when discussing the intent element of assault in the first degree with a dangerous instrument, stated: "What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another person's mind and saw therein a certain purpose to cause serious physical injury to another. The only way in which a jury can ordinarily determine what a person's purpose was at any given time, aside from that person's own statements or testimony, is by determining what the person's conduct was and what the circumstances were surrounding that conduct, and from that, infer

that you have been given in relation to the law of self-defense. If the evidence of accident leaves you with a reasonable doubt that the defendant acted intentionally, the defendant must be acquitted. The burden of proving beyond a reasonable doubt that the defendant intended to cause the injury is upon the state, and if it has not met that burden, then you must find the defendant not guilty."

what the person's purpose was."[4] At the state's request, the court also gave a lesser included offense instruction for assault in the second degree with a dangerous instrument and gave a similar instruction with respect to the element of intent.[5]

[4] In pertinent part, the court's instruction regarding assault in the first degree with a dangerous instrument was as follows: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt. First, that the defendant intended to cause serious physical injury to another person. Second, that the defendant caused serious physical injury to that person or to a third person. And third, that he caused that injury by means of a dangerous instrument. . . . The state must first prove beyond a reasonable doubt that the defendant intended to cause serious physical injury to another person. What the defendant intended is a question of fact for you to determine. Intent relates to the condition of mind of the person who commits the act, his purpose in doing it.

"As defined by our statute, a person acts intentionally with respect to a result, in this case, the intent to cause serious physical injury when his conscious objective is to cause such a result. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another person's mind and saw therein a certain purpose to cause serious physical injury to another. The only way in which a jury can ordinarily determine what a person's purpose was at any given time, aside from that person's own statements or testimony, is by determining what the person's conduct was and what the circumstances were surrounding that conduct, and from that, infer what the person's purpose was. To draw such an inference is not only the privilege but also the proper function of a jury, provided of course that the inference drawn complies with the standard for inferences as I explained in connection with my instruction on circumstantial evidence."

[5] With respect to assault in the second degree with a dangerous instrument, the court instructed the jury in pertinent part: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: number one, that the defendant intended to physically injure another person. Two, the defendant caused such physical injury to his intended victim—his intended victim or to a third person. And three, that the defendant used a dangerous instrument in causing such injury. The state must first prove beyond a reasonable doubt that the defendant intended to cause physical injury to another person. What the defendant intended is a question of fact for you to determine.

"Intent relates to the condition of mind of a person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result, in this case, the intent to cause physical injury, when his conscious objective is to cause such result. Physical injury means impairment of physical condition or pain.

We conclude that the court's refusal to give the defendant's requested jury instruction regarding the defense theory of accident or unintended consequence was not improper because the court instructed the jury regarding the intent element of assault with a dangerous instrument in the first and second degrees. The defendant admitted that he struck Hernandez with a cocktail glass. As a result, Hernandez suffered injuries. The jury was left to determine whether the defendant intended this injury when he struck Hernandez. When defining intent in the context of assault, the court made clear in its instruction that if it was the conscious objective of the defendant to cause the result, namely, the injury, then he acted with the requisite intent, but if the jury failed to find the requisite intent beyond a reasonable doubt, then the defendant must be found not guilty. Given the court's instructions, it necessarily follows that the jury could not have found both that the defendant acted with the specific intent to cause injury to Hernandez and that he did not intend to inflict such injury. Accident is not a justification for a crime; *State* v. *Silveira*, 198 Conn. 454, 461, 503 A.2d 599 (1986); it negates only one element of the crime, namely, intent. *State* v. *Miller*, 186 Conn. 654, 665, 443 A.2d 906 (1982).

A reasonable jury would know that if it found that the defendant did not intend any consequences, then it could not also find that the defendant intended to

---

"What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another person's mind and saw therein a certain purpose or intention or a certain knowledge to cause physical injury to another person. The only way in which a person can ordinarily determine what a person's purpose was at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and from that infer what his purpose was. To draw such an inference is not only the privilege, but also the proper function of the jury, provided of course that the inference drawn complies with the standards for inferences as I explained them in connection with my instruction on circumstantial evidence."

cause physical injury or serious physical injury. The jury instruction on intent provided the jurors with a clear understanding of this element of the crime charged, and its lesser included offense, and therefore the requested charge on unintended consequences as it related to intent was given in substance.

As to the defendant's claim of self-defense and his request for a charge on accident or unintended consequences, the requested instruction is not applicable because the theories of accident and self-defense are inconsistent. See *State* v. *Shabazz*, 246 Conn. 746, 763–65, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). Unlike the defense of accident, self-defense presumes an intentional but justified act. See General Statutes § 53a-19. The court gave a lengthy instruction regarding self-defense.[6]

## II

The defendant next claims that the court improperly failed to charge the jury on his requested instruction regarding the lesser included offense of assault in the third degree. The defendant argues that the instruction should have been given because the evidence regarding whether he used a dangerous instrument was sufficiently in dispute to permit the jury to find him not guilty of assault in the first degree but guilty of the lesser included offense. We are not persuaded.

The following additional procedural history is relevant to our resolution of the defendant's claim. At the

---

[6] In sum, the court instructed the jury that "[t]he evidence in this case also raises the issue of self-defense. [When] [s]elf-defense is raised in a case, the state must disprove the defense beyond a reasonable doubt. . . . A person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose, except that deadly physical force may not be used unless the actor reasonably believes that such other person is using or about to use deadly physical force or inflicting or about to inflict great bodily harm."

conclusion of the evidentiary portion of the trial, defense counsel requested that the court give an instruction regarding assault in the third degree, General Statutes § 53a-61 (a) (1),[7] as a lesser included offense. The prosecutor objected, arguing that assault in the third degree lacks a dangerous instrumentality requirement and that there was no dispute that the defendant, in fact, had used a dangerous instrument. The court denied the defendant's request for a lesser included offense instruction regarding assault in the third degree. The court concluded that there was "not enough evidentiary dispute on that distinguishing element, the use of . . . a dangerous instrument to submit to the jury anything that doesn't involve the use of a dangerous instrument."[8]

We begin by setting forth the standard of review. "[T]here is no fundamental constitutional right to a jury instruction on every lesser included offense . . . . *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980). Rather, the right to such an instruction is purely

---

[7] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[8] The court concluded: "Both sides admit—the defendant himself admits that he used the glass when he struck Fabian Hernandez. If there were to be a conviction for something that didn't involve the use of a dangerous instrument, I'm hard-pressed to say that the jury would find that to be. I guess, you know, I'd say [defense counsel], they could find that he hit him with the glass, but the glass wasn't the dangerous instrument. But the evidence showed the glass shattered.

"The very last question he was asked by the [prosecutor] on his recross-examination I think had used the word 'exploded'; did you hit him with that glass to the extent that the glass exploded?

"The evidence shows that both people were lacerated by the glass in the manner it was used. The defendant claims that he had serious lacerations of his right hand, and we have seen the evidence and the pictures of the lacerations to the—to Mr. Hernandez.

"I think under those circumstances, there's not enough evidentiary dispute on that distinguishing element, the use of . . . a dangerous instrument, to submit to the jury anything that doesn't involve the use of a dangerous instrument. That's my conclusion . . . ."

a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. Id., 588.

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant,* supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) *State* v. *Corbin,* 260 Conn. 730, 744–45, 799 A.2d 1056 (2002).

We conclude that the first two prongs of *Whistnant* are met. In fulfillment of the first prong, the defendant requested that the court give an instruction regarding assault in the third degree as a lesser included offense, and on that same day submitted a supplemental request to charge, including a proposed instruction regarding that charge. See *State* v. *Colon,* 272 Conn. 106, 224 n.78, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). The second prong is met because assault in the third degree is a lesser offense included within the crime of assault in the first

degree. *State* v. *Abdalaziz*, 45 Conn. App. 591, 598, 696 A.2d 1310 (1997), aff'd, 248 Conn. 430, 729 A.2d 725 (1999).

Having determined that the defendant met the first two prongs of *Whistnant*, we now address the third and fourth prongs. "Despite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis. . . . [A reviewing court] will, therefore, analyze them simultaneously. The third prong of *Whistnant* requires that there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense . . . . The fourth prong requires that the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Citations omitted.) *State* v. *Smith*, 262 Conn. 453, 468–69, 815 A.2d 1216 (2003).

The defendant requested that the jury be instructed on the lesser included offense of assault in the third degree under § 53a-61 (a) (1). The use of a dangerous instrument is an element found in assault in the first degree with a dangerous instrument, § 53a-59 (a) (1),[9] but not in assault in the third degree, § 53a-61 (a) (1),[10] which contains no instrumentality requirement. A "dangerous instrument" is defined as "any instrument, article or substance which, under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the

---

[9] See footnote 1.
[10] See footnote 7.

function of any bodily organ . . . ." General Statutes § 53a-3 (4).

The 1971 comment to General Statutes § 53a-3 by the commission to revise the criminal statutes states: " 'Dangerous instrument' is meant to include anything which, under the circumstances of its actual or threatened use, is capable of causing death or serious physical injury. The focus, in the concept of 'dangerous instrument,' is on the way it is used or threatened or attempted to be used, and its capability under these circumstances." Commission to Revise the Criminal Statutes, Penal Code comments, Connecticut General Statutes Annotated (West 2001), supra, § 53a-3, commission comment. "[I]t is not necessary, under . . . the definition of a dangerous instrument, that any physical injury actually have been inflicted. It [is] only necessary that the [instrument] have been under the circumstances in which it [was] used . . . capable of causing death or serious physical injury." (Internal quotation marks omitted.) *State* v. *Jones*, 173 Conn. 91, 95, 376 A.2d 1077 (1977).

"[T]he analysis focuses on the actual circumstances in which the instrument is used in order to consider the instrument's potential to cause harm. . . . The statute neither restricts the inquiry to the exact manner in which the object was actually used, nor requires any resulting serious physical injury. . . . The facts and circumstances need show only that the general way in which the object was used could potentially have resulted in serious physical injury." (Citation omitted.) *State* v. *Green*, 38 Conn. App. 868, 881, 663 A.2d 1085 (1995). "The object's potential for injury, therefore, must be examined only in conjunction with the circumstances in which it is actually used or threatened to be used, and not merely viewed in terms of its dangerous capabilities in the abstract." *State* v. *Grant*, 177 Conn. 140, 146 n.5, 411 A.2d 917 (1979). Ordinary objects that

are used in ways that would likely cause death or serious physical injury can constitute dangerous instruments. *State* v. *Osman*, 21 Conn. App. 299, 305–307, 573 A.2d 743 (1990), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991); *State* v. *McColl*, 74 Conn. App. 545, 554, 813 A.2d 107 (concluding that ordinary object may be dangerous instrument), cert. denied, 262 Conn. 953, 818 A.2d 782 (2003).

Accordingly, it is the circumstances under which an item is used that make it a dangerous instrument. *State* v. *Ramos*, 271 Conn. 785, 794, 860 A.2d 249 (2004). Here, it is not sufficiently in dispute that under the circumstances in which the defendant used the cocktail glass, it was a dangerous instrument capable of causing serious physical injury. It is not disputed that the defendant forcefully smashed a drinking glass against Hernandez' face, causing permanent scarring. The defendant testified on cross-examination that he generated sufficient force to cause the glass to shatter against Hernandez' face. A friend of Hernandez, who was standing near him at the time of the incident, testified that the glass shattered with such impact that he discovered a piece of glass in his pocket after the altercation. The extent of Hernandez' injuries were not disputed.

The defendant claims that the use of a dangerous instrument was sufficiently in dispute because he did not adapt the glass for use as a dangerous instrument by breaking it and, thus, did not intend to use it as a dangerous instrument. Regardless of the lack of adaptation, the defendant struck the victim in the face with such force that the glass shattered, and Hernandez needed forty-one sutures to close his wound. The defendant also argues that whether the glass was used as a dangerous instrument was sufficiently in dispute because he did not intend, under the circumstances, to inflict serious injury. "Proof of intent to cause serious physical injury is quite different from proof that [the

instrument] is capable of causing serious physical injury." *State* v. *Ramos*, 70 Conn. App. 855, 861, 800 A.2d 631 (2002), rev'd on other grounds, 271 Conn. 785, 860 A.2d 249 (2004). Any dispute concerning the defendant's intent to cause serious physical injury, therefore, is not relevant to our determination of whether it was sufficiently in dispute that the glass was a dangerous instrument under the circumstances in which it was used. See id. Because the use of a dangerous instrument was not sufficiently in dispute, we conclude that the court properly declined to charge the jury on the lesser included offense of assault in the third degree.

### III

The defendant next claims that the statutory scheme mandating a nonsuspendable five year minimum term of imprisonment upon conviction of assault in the first degree by means of a dangerous instrument violates his rights to equal protection and substantive due process.[11] We disagree.

The following additional procedural history is relevant to our resolution of the defendant's claim. On February 14, 2005, the defendant filed a motion to preclude in which he sought to avoid the impact of § 53a-59 (b) (1), which provides that any person convicted of assault

[11] The defendant also claims that the statutory scheme violates his rights to equal protection and substantive due process under the Connecticut constitution. Because the defendant does not provide an independent analysis under the state constitution, we deem that the defendant has abandoned his state constitutional claims. See *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992) (defendant must provide independent analysis under particular provision of state constitution); see also *State* v. *Pierre*, 277 Conn. 42, 74 n.12, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). The defendant also makes the abstract assertion that the sentencing scheme violates his federal procedural due process rights but provides no analysis of that claim. We therefore decline to afford it review. See *State* v. *Caracoglia*, 95 Conn. App. 95, 129, 895 A.2d 810, cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006).

in the first degree under § 53a-59 (a) (1) shall be sentenced to a term of imprisonment of which five years may not be suspended or reduced by the trial court. The defendant argued that the five year nonsuspendable term of incarceration violates his rights to equal protection and due process because the sentencing scheme is arbitrary and irrational in that it assigns a greater penalty to assault in the first degree with a dangerous instrument than it does to manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). In denying the defendant's motion, the court concluded that a number of rational bases existed for the sentencing scheme.

## A

The defendant first claims that the sentencing scheme of General Statutes § 53a-35a,[12] mandating a nonsuspendable five year minimum term of imprisonment upon conviction of assault in the first degree by means of a dangerous instrument, violates his constitutional right to equal protection. He argues that this sentencing scheme arbitrarily and irrationally creates a sentencing disparity that imposes a greater punishment on him for committing a lesser crime.[13] We disagree.

---

[12] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (4) for the class B felony of manslaughter in the first degree with a firearm under section 53a-55a, a term not less than five years nor more than forty years; (5) for a class B felony other than manslaughter in the first degree with a firearm under section 53a-55a, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years . . . ."

[13] The defendant argues that the statutory sentencing scheme irrationally and arbitrarily creates a sentencing disparity that imposes a greater penalty of a nonsuspendable minimum sentence of five years and a maximum of twenty on assault in the first degree with a dangerous instrument; General Statutes § 53a-59 (a) (1); and attempt or conspiracy to commit assault in the first degree with a dangerous instrument; General Statutes §§ 53a-59 (a) (1), 53a-48 and 53a-49; which the defendant claims are less culpable offenses, while imposing a lesser penalty of one to twenty years, all suspendable, for

In order to analyze the defendant's claim, we "first must detail the principles applicable to equal protection analysis. . . . First, in general, as in any constitutional challenge to the validity of a statutory scheme, the [statutory scheme] is presumed constitutional . . . and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . . *Heller* v. *Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). . . . *State* v. *Wright*, [246 Conn. 132, 138–39, 716 A.2d 870 (1998)].

"Moreover, [t]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . Thus, the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated. . . .

"The equal protection clause does not require absolute equality or precisely equal advantages [between such similarly situated persons] . . . . *Ross* v. *Moffitt*, 417 U.S. 600, 612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.*, [200 Conn. 562, 577–78, 512 A.2d 893 (1986)]. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. *Dunn* v. *Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). . . . *Franklin* v. *Berger*, 211 Conn. 591, 595, 560 A.2d 444 (1989). Where . . . the classification at issue neither impinges upon a fundamental right nor

the following offenses that the defendant claims are more serious: manslaughter in the first degree; General Statutes § 53a-55 (a) (1); attempt to commit murder; General Statutes §§ 53a-49 and 53a-54; and conspiracy to commit murder. General Statutes §§ 53a-48 and 53a-54.

affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. . . . Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature." (Citations omitted; internal quotation marks omitted.) *State* v. *Moran*, 264 Conn. 593, 606–607, 825 A.2d 111 (2003).

The parties agree that the constitutionality of the sentencing scheme under which the defendant was sentenced must be analyzed under rational basis review, as it neither implicates a fundamental right nor a suspect class. We next determine the "analytical predicate of an equal protection claim, namely, a determination of who are the persons similarly situated . . . ." (Internal quotation marks omitted.) Id., 607. The defendant claims that he is a member of a single, similarly situated group covered by a single sentencing scheme.[14] The gravamen of the defendant's claim is that a person convicted of manslaughter in the first degree in violation of § 53a-55 (a) (1),[15] which the defendant claims is the more serious offense, would not be exposed to any

[14] The defendant argues that the following are consequences of this sentencing scheme: (1) within the class of assailants using dangerous instruments, who intend to inflict serious physical injury, those whose victims survive have a harsher minimum punishment than those whose victims die; (2) within the class of persons who cause serious physical injury by means of a dangerous instrument, the person who intends to cause death, but fails, is subject to a lesser minimum punishment than the person who intends only serious physical injury; and (3) within the class of persons who attempt or conspire, those who attempt or conspire to commit murder by means of a dangerous instrument are subject to a lesser penalty than those who attempt or conspire to commit serious physical injury with a dangerous instrument.

[15] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

mandatory nonsuspendable minimum sentence, whereas a person convicted of assault in the first degree with a dangerous instrument, which the defendant claims is the less serious offense, would be subject to a nonsuspendable mandatory minimum sentence of five years.

The defendant relies primarily on *State* v. *Jenkins*, 198 Conn. 671, 504 A.2d 1053 (1986), and *State* v. *O'Neill*, 200 Conn. 268, 511 A.2d 321 (1986), in support of his claim. We reject the defendant's argument that *Jenkins* and *O'Neill* govern the present case. The defendants in *Jenkins* and *O'Neill* both claimed that their right to equal protection was violated because the relevant sentencing scheme assigned a greater penalty to the lesser crime for which they were convicted. The defendants in *Jenkins* and *O'Neill* compared two similar crimes; namely, kidnapping in the first degree with a firearm to the less serious offense of kidnapping, and arson murder to the lesser included offense of arson in the first degree, respectively. Due to the similar nature of the crimes compared, it was impossible for the court to conceive of a rational basis to support treating the less serious crime more severely than the more serious crime. See *State* v. *Moran*, supra, 264 Conn. 614; *State* v. *Wright*, supra, 246 Conn. 153–55.

We agree with the state that the approach taken in *State* v. *Moran*, supra, 264 Conn. 593, and *State* v. *Wright*, supra, 246 Conn. 132, applies. The defendants in *Moran* and *Wright* also challenged the constitutionality of a sentencing scheme, which they claimed imposed a greater penalty on a lesser crime. Unlike the crimes compared by the defendants in *Jenkins* and *O'Neill*, the crimes compared by the defendants in *Moran* and *Wright* were separate and distinct. *State* v. *Moran*, supra, 607–608 (comparing conspiracy to commit robbery in first degree and conspiracy to commit murder); *State* v. *Wright*, supra, 142 (comparing simple robbery

and larceny). The court in *Moran*, citing *State* v. *Wright*, supra, 153, rejected the defendant's contention that *Jenkins* and *O'Neill* controlled, and concluded that "because the two crimes the defendant is attempting to compare in the present case are separate and distinct crimes, it leaves 'ample scope for discovery of a rational basis for the different penalties for each offense.' " *State* v. *Moran*, supra, 613.

Here, the defendant compares assault in the first degree with a dangerous instrument and manslaughter in the first degree. These offenses "constitute two separate and distinct crimes" under *State* v. *Wright*, supra, 246 Conn. 142.[16] As our Supreme Court explained in *Wright*, "a defendant who has committed acts satisfying the elements of both crimes could be convicted of and sentenced for both offenses, without violating the constitutional prohibition against double jeopardy." Id.; see also *State* v. *Alvarez*, 257 Conn. 782, 789, 778 A.2d 938 (2001). Manslaughter in the first degree and assault in the first degree each require proof of an element that the other does not. Manslaughter in the first degree requires proof that the defendant caused the death of the victim, and assault in the first degree requires proof that the defendant caused serious physical injury by means of a dangerous instrument.

Because the offenses are separate and distinct, "the defendant's claim is ill-suited to the framework of equal protection," but we, nevertheless, choose to proceed in the framework of equal protection analysis by "[a]ssuming arguendo that the two categories of defendants identified . . . are similarly situated with respect to the [statutory scheme] . . . . Doing so allows us to engage in a rational basis analysis that, for all material

---

[16] Additionally, the defendant conceded at trial that assault in the first degree with a dangerous instrument is not a lesser offense included within manslaughter in the first degree.

purposes, is indistinguishable from the analysis in which we would engage pursuant to a due process claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Moran*, supra, 264 Conn. 608.

We conclude that the legislature's decision, requiring a mandatory minimum sentence of five years for those who are found guilty of assault in the first degree with a dangerous instrument, while not requiring a mandatory minimum sentence for those who are found guilty of manslaughter in the first degree, is supported by a rational basis. As the trial court correctly concluded, a number of possible rational bases exist for the statutory sentencing scheme. First, the legislature reasonably could have decided to create an incentive to reduce the number of permanently disabling or disfiguring injuries suffered by victims of assault, and the attendant societal costs, by putting a mandatory minimum sentence on those who use dangerous instruments, as such instruments are far more likely to cause such injuries than unarmed or barehanded assaults. Another basis would be to deter the commission of serious assault offenses on the belief that they are more easily and more frequently committed than homicide offenses. A further basis for the statutory scheme is the deterrence of serious assault offenses with a five year mandatory sentence, and not manslaughter offenses, under the reasonable belief that a person convicted of manslaughter in the first degree probably would not in any event receive a sentence of fewer than five years, whereas a person convicted of assault in the first degree with a dangerous instrument might otherwise receive a sentence of fewer than five years. The defendant has not met his burden of negating these rational bases, and, therefore, his claim fails.

### B

The defendant also claims, for the same reasons stated in his equal protection claim, that the sentencing

scheme of § 53a-35a violates his right to substantive due process. We disagree.

"[Where] the defendant's claim does not implicate a fundamental right, we review the sentencing scheme at issue in the present case under a rational basis test. . . . In order for a statute to withstand rational basis review, the state must show only that the law is not arbitrary or capricious, that is, that it bears a reasonable relation to some legitimate state purpose. . . . The party claiming a constitutional violation bears the heavy burden of proving that the challenged policy has no reasonable relationship to *any* legitimate state purpose . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 615.

Our analysis of the defendant's due process claim mirrors our analysis of the defendant's equal protection claim because both allege that the application of the sentencing scheme in the present case creates irrational results. See id. For the same reasons that we rejected this claim in part III A, we conclude that the sentencing scheme at issue in the present case does not violate the defendant's right to due process under the federal constitution.

The judgment is affirmed.

In this opinion the other judges concurred.