STATE OF CONNECTICUT *v.* EDDIE BONILLA
(AC 31927)

DiPentima, C. J., and Lavine and Bear, Js.

Argued June 1—officially released September 13, 2011

*Sydney T. Schulman,* with whom, on the brief, was *Alina Bricklin-Goldstein,* for the appellant (defendant).

*Nancy L. Walker,* special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* former state's attorney, and *Jason Germain,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. In this case, we are called upon to decide whether the defendant was properly convicted of a felony because he knowingly acted as a spectator at an illegal activity—a cockfight. We conclude that the defendant was properly convicted under General Statutes § 53-247 (c) and that his constitutional claims are without merit.

The defendant, Eddie Bonilla, appeals from the judgment of conviction, rendered after he entered a conditional plea of nolo contendere, of one count of cruelty to animals in violation of § 53-247 (c) (4). On appeal, the defendant claims that § 53-247 (c) (4) is unconstitutional because it (1) impinges on his rights of freedom of assembly and freedom of association as guaranteed by the first amendment to the United States constitution and (2) violates his equal protection rights as guaranteed by the fourteenth amendment to the United States constitution. We disagree, and, accordingly, affirm the judgment of conviction.

The following facts and procedural history are relevant to this case. On February 28, 2009, police responded to a complaint of ongoing cockfights at 1014 Main Street in Waterbury (property). After obtaining a search warrant, the police discovered evidence of cockfighting at the property and arrested several people, including the defendant, whom the police reported

seeing around the cockfighting ring. When arrested, the defendant was in possession of $905.

The defendant was charged in a substituted information with one count each of cruelty to animals in violation of § 53-247 (c) (4), cruelty to animals in violation of § 53-247 (c) (5) and gambling in violation of General Statutes § 53-278b (a). On January 11, 2010, the defendant filed an amended motion to dismiss the charges against him, alleging that § 53-247 (c) violates his rights under the first, fifth and fourteenth amendments to the United States constitution and article first, §§ 8, 14 and 20, of the constitution of Connecticut. The court denied the defendant's motion without issuing a written or oral memorandum of decision.

On January 12, 2010, the defendant entered a plea of nolo contendere to the charge of cruelty to animals in violation of § 53-247 (c) (4). The defendant's plea, however, was conditioned on his right to appeal the constitutional claims raised in his motion to dismiss.[1] The court imposed an effective sentence of three years imprisonment, execution suspended, and three years conditional discharge. This appeal followed.

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

On November 3, 2010, this court, sua sponte, ordered this matter remanded to the trial court with direction to address whether the court denied the defendant's motion to dismiss and whether its ruling was dispositive of the case, thereby satisfying the requirements of § 54-94a. On January 26, 2011, the court denied the motion to dismiss and concluded that the denial was dispositive of the case.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *St. Louis*, 128 Conn. App. 703, 717, 18 A.3d 648 (2011).

I

The defendant first claims that § 53-247 (c) (4) unconstitutionally infringes on his right of freedom of assembly and freedom of association as guaranteed by the first amendment to the United States constitution. Specifically, the defendant argues that "criminalizing as a *felony* the mere observation of a criminal act as a 'spectator' is an invasive, unconstitutional abridgment of his freedom of assembly [and freedom of association] . . . ." (Emphasis in original.) We disagree.

The constitutionality of a statute presents a question of law; see *State* v. *Long*, 268 Conn. 508, 520–21, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004); over which our review is plenary. *State* v. *Long*, 301 Conn. 216, 236, 19 A.3d 1242 (2011). "We recognize that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 754, 687 A.2d 506 (1997). "Unless laws create suspect classifications or impinge upon constitutionally protected rights . . . it need only be shown that they bear some rational

relationship to a legitimate state purpose . . . ." (Citation omitted; internal quotation marks omitted.) *Dallas v. Stanglin*, 490 U.S. 19, 23, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989).

The first amendment to the United States constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental. . . . The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances. The First Amendment of the Federal Constitution expressly guarantees that right against abridgment by Congress."[2] (Internal quotation marks omitted.) *De Jonge v. Oregon*, 299 U.S. 353, 364, 57 S. Ct. 255, 81 L. Ed. 278 (1937).

The United States Supreme Court, however, also has concluded that the right of assembly "may be abused by using . . . assembly in order to incite to violence and crime. The people through their legislatures may protect themselves against that abuse. . . . If the persons assembling have committed crimes elsewhere, if they have formed or are engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy or other violation of valid laws." Id., 364–65.

---

[2] Because the first amendment is applicable to the states through the fourteenth amendment to the United States constitution; *Thibodeau v. American Baptist Churches of Connecticut*, 120 Conn. App. 666, 670, 994 A.2d 212, cert. denied, 298 Conn. 901, 3 A.3d 74 (2010); this right is guaranteed against abridgment by state government as well.

Although not expressly enumerated in the first amendment, the right of association has been recognized as a fundamental right under the first amendment as well. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *National Assn. for the Advancement of Colored People* v. *Alabama*, 357 U.S. 449, 460, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). "[T]he right to engage in activities protected by the First Amendment implies a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. . . . [I]mpediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First Amendment . . . ." (Citations omitted; internal quotation marks omitted.) *Board of Directors of Rotary International* v. *Rotary Club*, 481 U.S. 537, 548, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987).

The United States Supreme Court has "referred to constitutionally protected 'freedom of association' in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts* v. *United States Jaycees*, 468 U.S. 609, 617–18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

In *Dallas* v. *Stanglin*, supra, 490 U.S. 19, the United States Supreme Court further clarified the types of association that are protected under the first amendment. In that case, the city of Dallas passed an ordinance authorizing the licensing of dance halls that restricted admission to persons between the ages of fourteen and eighteen. Id., 21. The owner of one of the dance halls sought an injunction, claiming that the ordinance "unconstitutionally infringed the rights of persons between the ages of [fourteen] and . . . [eighteen] to associate with persons outside that age bracket." Id., 22.

In addressing the dance hall owner's claim, the court first noted that the dance hall patrons were not engaged in the sort of intimate human relationships referred to in *Roberts* v. *United States Jaycees*, supra, 468 U.S. 617–18. *Dallas* v. *Stanglin*, supra, 490 U.S. 24. The court further concluded that the ordinance "limits the minors' ability to dance with adults who may not attend, and it limits the opportunity of such adults to dance with minors. *These opportunities might be described as 'associational' in common parlance, but they simply do not involve the sort of expressive association that the First Amendment has been held to protect.* The hundreds of teenagers who congregate each night at this particular dance hall are not members of any organized association; they are patrons of the same business establishment. Most are strangers to one another, and the dance hall admits all who are willing to pay the admission fee. There is no suggestion that these patrons 'take positions on public questions' or perform any of the other similar activities described in *Board of Directors of Rotary International* v. [*Rotary Club*, supra, 481 U.S. 548]." (Emphasis added.) *Dallas* v. *Stanglin*, supra, 24–25. Moreover, the court noted that "we do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance

halls"; id., 25; and, accordingly, concluded that the ordinance "impinges on no constitutionally protected right." Id.

The defendant in the present case was convicted of cruelty to animals in violation of § 53-247 (c) (4). Section 53-247 (c) provides in relevant part: "Any person who knowingly . . . (4) acts as judge or spectator at an exhibition of animal fighting for amusement or gain . . . shall be fined not more than five thousand dollars or imprisoned not more than five years or both." The defendant argues that under this statute, he is "being sentenced to a felony, with all of its attendant circumstances, for exercising his rights of freedom of association and assembly merely for being a 'spectator,' along with others, at the scene of a cockfight but not partaking therein." We conclude, however, that § 53-247 (c) (4) does not impinge on the defendant's right of the freedom of association and assembly.

As noted, the right to assemble, as recognized under the first amendment, does not encompass the right to assemble for an unlawful purpose. *De Jonge* v. *Oregon,* supra, 299 U.S. 364–65. The defendant argues that he was not partaking in an unlawful activity but merely assembled with others "who may or may not themselves actually [be] engaged in or conducted the cockfight itself." We conclude, however, that, as a spectator at a cockfight, an individual is engaged in promoting and facilitating the existence of the unlawful conduct. "[P]rohibiting knowing presence of spectators at animal fights is consistent with the legislative purpose to prevent such fights because, without the 'knowing presence' of spectators, much of the 'sport' of the fights would be eliminated."[3] *People* v. *Bergen,* 883 P.2d 532,

---

[3] In its brief to this court, the state analogizes spectating at a cockfight with possessing child pornography. Specifically, the state claims that "spectators provide a market for illegal cockfighting just as possession, distribution and sharing of child pornography provide a market for the sexual abuse of children."

545 (Colo. App.), cert. denied, 1994 Colo. LEXIS 849 (Colo. November 15, 1994); see also *State* v. *Tabor,* 678 S.W.2d 45, 48 (Tenn. 1984) ("[p]rohibiting the public exhibition of [cockfighting] can be reasonably achieved by making willful attendance at them a criminal offense").

In *State* v. *Arnold,* 147 N.C. App. 670, 557 S.E.2d 119 (2001), aff'd, 356 N.C. 291, 569 S.E.2d 648 (2002), the North Carolina Court of Appeals addressed a similar issue. In that case, the defendant had been convicted of acting as a spectator at an exhibition featuring dog fighting. Id., 671. The defendant appealed from his conviction, claiming that N.C. Gen. Stat. § 14-362.2 (c) was unconstitutional.[4] Id., 672. In rejecting the defendant's claim, the North Carolina Court of Appeals noted that "people have the right to peacefully assemble for lawful purposes. . . . However, in the case at bar, people, including defendant, were assembled for an *unlawful* purpose." (Citation omitted; emphasis in original.) Id., 675.

Cockfighting is unlawful in Connecticut. See General Statutes § 53-247 (c).[5] The defendant was knowingly acting as a spectator at a cockfight, which we have concluded is a form of participation. It is permissible, therefore, under the United States constitution to prohibit an individual from assembling for the knowing

---

[4] Section 14-362.2 (c) of the North Carolina General Statutes provides: "A person who participates as a spectator at an exhibition featuring the fighting or baiting of a dog is guilty of a Class H felony."

[5] General Statutes § 53-247 (c) provides: "Any person who knowingly (1) owns, possesses, keeps or trains an animal engaged in an exhibition of fighting for amusement or gain, (2) possesses, keeps or trains an animal with the intent that it be engaged in an exhibition of fighting for amusement or gain, (3) permits an act described in subdivision (1) or (2) of this subsection to take place on premises under his control, (4) *acts as judge or spectator at an exhibition of animal fighting for amusement or gain,* or (5) bets or wagers on the outcome of an exhibition of animal fighting for amusement or gain, shall be fined not more than five thousand dollars or imprisoned not more than five years or both." (Emphasis added.)

purpose of acting as a spectator at a cockfight.[6] Accordingly, we conclude that § 53-247 (c) (4) does not violate the defendant's constitutional right of the freedom of assembly.

We further conclude that § 53-247 (c) (4) does not violate the defendant's constitutional right of the freedom of association. As noted, the United States Supreme Court has referred to constitutionally protected "freedom of association" in two distinct senses, namely, the right to associate for the purpose of entering into and maintaining intimate human relationships and for engaging in those activities protected by the first amendment. *Roberts* v. *United States Jaycees,* supra, 468 U.S. 617–18.

In *Roberts,* the United States Supreme Court clarified the meaning of "intimate human relationships." Specifically, the court noted that "[t]he personal affiliations that . . . suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family—marriage . . . childbirth . . . the raising and education of children . . . and cohabitation with one's relatives . . . . Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively

---

[6] The legislative history of § 53-247 (c) (4) details the grotesque nature of cockfighting. Arnold F. Baer, director of the New England office of the Humane Society of the United States, testified on March 21, 1996, during a hearing on House Bill 5803, an act concerning cruelty to animals, that "knives and gaffs . . . are attached to the [birds] to ensure that there be death involved and bleeding or cutting. . . . In these fights [the birds are] forced to keep fighting and fighting until the death." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 1996 Sess., p. 2079. Baer went on to add that "some [cockfights] can go for two hours. They throw them into another pit until a winner is established by death. . . . It's outright animal abuse . . . ." Id., p. 2080.

personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty." (Citations omitted.) Id., 619–20. The defendant clearly was not engaged in the sort of intimate human relationships described in *Roberts* when he knowingly joined others as a spectator at a cockfight. If patrons of a dance hall are not engaged in the type of intimate human relationships that merit freedom of association protection; see *Dallas* v. *Stanglin*, supra, 490 U.S. 19; then surely patrons gathered to observe an unlawful activity such as a cockfight are not.

We conclude further that individuals associating with one another for the purpose of acting as spectators at a cockfight "simply do[es] not involve the sort of expressive association that the First Amendment has been held to protect." Id., 24. The spectators at the cockfight on February 28, 2009, were not, so far as the record reflects, members of any organized association; nor is there any suggestion that these spectators were engaged in taking positions on public questions or engaged in the "pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." (Internal quotation marks omitted.) *Board of Directors of Rotary International* v. *Rotary Club*, supra, 481 U.S. 548. Nor were they engaged in scholarly, or eleemosynary pursuits. "It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the

protection of the First Amendment." *Dallas* v. *Stanglin,* supra, 490 U.S. 25. Attending a cockfight as a spectator is neither a form of "intimate association" nor a form of "expressive association" as recognized by our courts or the United States Supreme Court and, therefore, does not fall under the protection of the defendant's constitutionally recognized right of freedom of association.

The defendant also argues in his brief to this court that § 53-247 (c) (4) is unconstitutionally "overreaching . . . ."[7] We conclude that the statute does not overreach because it applies only to those individuals who *knowingly* act as a spectator at a cockfight. The requirement that the conduct be knowing, therefore, protects those individuals who inadvertently or mistakenly find themselves observing a cockfight. It is up to the finder of fact, of course, to determine if the knowledge element has been proven.

Because § 53-247 (c) (4) does not infringe on the defendant's right of freedom of assembly and freedom of association, "it need only be shown that [the statute] bear[s] some rational relationship to a legitimate state purpose . . . ." (Citation omitted; internal quotation marks omitted.) *Dallas* v. *Stanglin,* supra, 490 U.S. 23. The defendant admits that the "suppression of animal cruelty is a legitimate state objective . . . ." Section 53-247 (c) (4) furthers this objective by criminalizing the act of knowingly observing cockfights. As noted, without the knowing presence of spectators, much of

---

[7] While it is not entirely clear to us what the defendant means by "overreaching," as noted, the defendant claims that "the statute at bar is unconstitutionally overreaching, as [he] is penalized for associating and assembling with individuals who may or may not themselves [be] actually engaged in or [who may or may not have] conducted the cockfight itself. In essence, the defendant is being sentenced to a felony, with all of its attendant circumstances, for exercising his rights of freedom of association and assembly for merely being a 'spectator,' along with others, at the scene of a cockfight but not partaking therein."

the " 'sport' " of cockfighting would be eliminated, thereby reducing the frequency of cockfights. *People* v. *Bergen*, supra, 883 P.2d 545. We conclude that § 53-247 (c) (4) is rationally related to the state's objective of eliminating animal cruelty and therefore does not violate the defendant's constitutional right of the freedom of assembly and freedom of association.[8]

## II

In his second claim, the defendant argues that § 53-247 (c) (4) infringes on his equal protection rights as guaranteed by the fourteenth amendment to the United States constitution.[9] The defendant claims that by punishing spectators of cockfights but not punishing spectators of other illegal conduct, the state unnecessarily

[8] There also is a significant rationale supporting the legislature's decision to make a violation of § 53-247 (c) (4) a felony rather than a misdemeanor. Arnold F. Baer, director of the New England office of the Humane Society of the United States, testified on March 21, 1996, during a hearing on House Bill 5803, an act concerning cruelty to animals, and stated that "[s]tates with misdemeanor penalties have become havens for dog and cockfighters. Small fines are no deterrent considering the amount of money to be gained. . . . More and more reports of dog and cockfights are surfacing in Connecticut. Swift and stronger action needs to be taken." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 1996 Sess., p. 2334.

[9] The defendant specifically claims that § 53-247 (c) (4) violates his due process and equal protection rights under both the United States and Connecticut constitutions. The defendant, however, does not provide a separate state constitutional analysis, nor does he cite to this court any cases in his brief that reference any state constitutional rights. Furthermore, the defendant has not distinguished his due process claim from the first amendment claim that he raised in part I of his brief. In part II of his brief, the defendant argues that "in 1937, the [United States Supreme Court] held that the right of peaceful assembly was a fundamental right safeguarded by the due process clause of the fourteenth amendment, thus applying to the states." The defendant goes on to assert that § 53-247 (c) (4) violates his due process rights without providing any supporting case law or any arguments that are different from those introduced in support of his first amendment claim. We will, therefore, only address the defendant's claim that § 53-247 (c) (4) violates his equal protection rights under the United States constitution.

abridges his equal protection rights.[10] Again, we disagree.

"[T]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . Thus, the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated. . . .

"The equal protection clause does not require absolute equality or precisely equal advantages [between such similarly situated persons] . . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. . . . Where . . . the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. . . . Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature." (Citations omitted; internal quotation marks omitted.) *State* v. *Schultz*, 100 Conn. App. 709, 725–26, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). "Further, [i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." (Internal

---

[10] The defendant also argues under this claim that the term "spectator" is "vague and indefinite . . . ." It is unclear whether the defendant is claiming that the statute is, therefore, unconstitutionally vague. Even if the defendant is making such a claim, however, we conclude that we do not need to address it because it is briefed inadequately. See *State* v. *Heck*, 128 Conn. App. 633, 641 n.2, 18 A.3d 673, cert. denied, 301 Conn. 935, 23 A.3d 728 (2011).

quotation marks omitted.) *Cormier* v. *Commissioner of Motor Vehicles*, 105 Conn. App. 558, 566, 938 A.2d 1258 (2008).

We already have concluded that § 53-247 (c) (4) does not impinge on the defendant's fundamental right of freedom of assembly and freedom of association. See part I of this opinion. Furthermore, spectators at a cockfight are not recognized as part of a suspect group and the defendant has not argued that he is part of a suspect group. Thus, assuming, arguendo, that a spectator at a cockfight is similarly situated to a spectator of other illegal conduct for equal protection purposes, the only issue before us is whether § 53-247 (c) (4) is founded on a rational basis. In part I of this opinion, we concluded that it is.

As noted, "[p]rohibiting knowing presence of spectators at animal fights is consistent with the legislative purpose to prevent such fights because, without the 'knowing presence' of spectators, much of the 'sport' of the fights would be eliminated." *People* v. *Bergen*, supra, 883 P.2d 545. In other words, spectators comprise the market that supports, facilitates and perpetuates cockfighting. As noted, being knowingly present thus becomes, in and of itself, a form of participation. Criminalizing the act of being a spectator at a cockfight, therefore, discourages individuals from not only attending cockfights, but inhibits others from organizing, promoting and operating them as well. This is a plausible policy reason—indeed, a powerful policy reason—for criminalizing the act of being a knowing spectator at a cockfight and is more than sufficient to satisfy the rational basis test.

The defendant argues that "[b]ecause it is not a crime to be a spectator as someone is being assaulted, a rather sick individual could make a pastime of frequenting various bars known to have rowdy drinkers who engage

in bar brawls without being subjected to any criminal charges or convictions." Aside from the fact that bar brawls are not staged to entertain a crowd, and that they will presumably continue to occur irrespective of whether spectators are present, this argument is unpersuasive because the legislature does not need to eradicate all the " 'evils of the same genus' "; *Cormier* v. *Commissioner of Motor Vehicles*, supra, 105 Conn. App. 566; for § 53-247 (c) (4) to survive rational basis review. We conclude, therefore, that § 53-247 (c) (4) does not violate the defendant's rights under the equal protection clause of the United States constitution.

The judgment is affirmed.

In this opinion the other judges concurred.