## STATE OF CONNECTICUT *v.* MARCUS DUFFUS
### (AC 30974)

DiPentima, C. J., and Beach and Hennessy, Js.

---

Argued September 8—officially released November 9, 2010

*David R. Gronbach,* for the appellant (defendant).

*Denise B. Smoker,* senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Anthony Bochicchio,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Marcus Duffus, appeals from the judgment of conviction rendered following his conditional plea of nolo contendere[1] to possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[2] The defendant claims that the trial court erred in denying his motion to suppress certain evidence seized from his vehicle because (1) the police did not have probable cause to justify a warrantless search of his vehicle, (2) the consent he gave to search his vehicle was invalid because it was obtained as the result of

---

[1] General Statutes § 54-94a provides in relevant part that "[w]hen a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss . . . ."

[2] The defendant also had been charged with possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b). The state entered a nolle prosequi as to those charges.

an unlawful detention and (3) the evidence thereafter seized from his vehicle was the fruit of a *Miranda*[3] violation. We affirm the judgment of the trial court.

On August 29, 2008, the defendant filed a motion to suppress evidence seized from his vehicle by officers of the Hartford police department and the state police on April 9, 2008. The defendant argued that the search of his vehicle violated both his state and federal constitutional rights. On March 23 and 27, 2009, the court held evidentiary hearings on the defendant's motion to suppress; the court issued a memorandum of decision on May 26, 2009, denying the motion.

In its memorandum of decision denying the defendant's motion to suppress, the court set forth the following findings of fact: "On April 9, 2008, [Daniel] Villegas, a [detective with] the Hartford police department with two years of experience on the statewide narcotics task force, received a call on his cellular telephone from a confidential informant. The informant gave . . . Villegas the defendant's name and stated [that] the defendant had been picked up by the Bloomfield police on a domestic warrant. The informant stated that he (or she)[4] had a recent conversation with the defendant. Based on that conversation, the informant learned that the defendant, after his release from the Bloomfield police department, was going to get a ride to Wawarme Avenue in Hartford to pick up his vehicle—a gray, four door Lexus with the license plate number 174 WPN. According to the informant, the defendant said that he was going to sell the 3.5 kilo[grams] of cocaine that were being stored in the trunk of his vehicle. The informant told . . . Villegas that the defendant was on his way to Wawarme Avenue 'right now.'

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] The court stated that "Villegas did not disclose the identity of the informant in his incident report or at the hearing on the motion."

"The confidential informant was not a 'registered' informant with the police. His . . . or her . . . identity was passed on to . . . Villegas from another officer. . . . Villegas had worked with the informant for six to eight months prior to the April 9 telephone call and had met personally with the informant on several occasions. During that time, the information provided by the informant resulted in the surveillance of the defendant conducting 'street sales' of narcotics.[5] Prior to the arrest of the defendant, the informant had not provided any information leading to an arrest, seizure or conviction.

"After speaking with the informant . . . Villegas called Hartford patrol via his police radio— . . . Villegas testified that he called Hartford patrol because the defendant had been 'stopped in Hartford' prior to being picked up by the Bloomfield police—to verify that the defendant had been arrested by the Bloomfield police on a warrant. . . . Villegas then called Hartford police to request assistance for the verification of the location of the defendant's vehicle and for surveillance. . . . Mark Rinaldi [a detective with the Hartford police] responded to the call and located a Lexus, matching the description provided by the informant, parked on Wawarme Avenue. After approximately fifteen minutes of surveillance, Rinaldi observed a gray Honda with a female driver stop near the Lexus. He then observed the defendant exit the passenger side of the Honda. The defendant [then] walked toward the Lexus and opened the door of the vehicle with a key. The defendant was sitting down in the driver's seat, with his legs

---

[5] The court stated that "[a]t the hearing on the motion . . . Villegas produced, upon the request of the defendant, notes he had pertaining to his work with the confidential informant. The court reviewed the notes and questioned . . . Villegas to determine whether the notes should be disclosed to the defendant. After consideration by the court, the notes were not disclosed to the defense."

outside of the vehicle, when . . . Rinaldi approached and identified himself as a police officer. . . .

"Rinaldi asked the defendant for identification, and the defendant provided Rinaldi with his Connecticut driver's license. Shortly thereafter . . . Rinaldi asked the defendant to step outside of the vehicle and conducted a patdown search [of the defendant] for weapons. No weapons were found. . . . Rinaldi then placed the defendant in handcuffs for officer safety. The defendant was not placed in a patrol car, [and Rinaldi explained to the defendant that he was not under arrest]. Minutes later . . . Villegas, who was accompanied by . . . Ian Case, [a detective with the state police] arrived on the scene. . . . Rinaldi then stepped aside so . . . Villegas and Case could proceed with the investigation.

"After his arrival at the scene . . . Villegas spoke with the defendant. The defendant told . . . Villegas that he had just been released from the Bloomfield police department, where he had been detained on a domestic warrant. The defendant further stated that his girlfriend gave him a ride from Bloomfield to the current location. . . . Villegas told the defendant that he presently was being detained as a result of a narcotics investigation. He asked the defendant if the Lexus belonged to him. The defendant stated that the Lexus was not his vehicle but that he was using it because he is a clothing vendor. When . . . Villegas asked to see the vehicle registration, however, the defendant admitted that the Lexus belonged to him. . . . Villegas [then] asked the defendant if he would consent to a search of the vehicle and sign a consent to search form. The defendant agreed to both and stated that he had only clothes in the car. . . . Case then approached the defendant and asked if he could conduct a search with his canine. The defendant again agreed to the search. The defendant was not provided with a consent to

search form at that time, although . . . Villegas had one in his police vehicle that was on the scene. . . .

"Case proceeded to walk his canine around the Lexus. The canine twice alerted to the exterior of the vehicle's trunk. When the trunk was opened, the canine jumped into the trunk and alerted to the area of the spare tire wheel well, which was covered by a suitcase containing clothing. . . . Villegas pushed the suitcase aside, and the canine alerted to two plastic bags. . . . Villegas opened the bags and observed what appeared to be kilo-sized packages of narcotics and a large amount of United States currency [approximately $29,000] . . . .

"Villegas approached the defendant and informed him that the canine alerted to plastic bags in the trunk of the vehicle. . . . Villegas then provided the defendant with a consent to search form, which the defendant declined to sign.[6] The defendant was then advised of his *Miranda* rights."

On the basis of these findings, the court denied the defendant's motion to suppress, holding that the search was supported by probable cause sufficient to satisfy the automobile exception to the warrant requirement and that the defendant voluntarily had consented to the search. On March 30, 2009, the defendant entered a plea of nolo contendere, conditioned on his right to appeal from the court's denial of his motion to suppress. The court accepted the defendant's plea and determined

---

[6] The court stated that "[a]ccording to . . . Villegas' testimony, the defendant declined to sign the consent to search form after the canine alerted in the trunk of the vehicle . . . but *before* the drugs actually were discovered. In the incident report, however . . . Villegas indicated that the defendant declined to sign the form *after* the drugs were found. The testimony and incident report are consistent, however, in that the defendant twice provided oral consent to search the vehicle, and agreed to sign the consent to search form, before ultimately declining to sign the form." (Emphasis in original.)

that denial of the motion to suppress was dispositive of the case. The court then sentenced the defendant to fifteen years incarceration, execution suspended after seven years, followed by five years of probation. This appeal followed.

## I

The defendant first claims that the court erred in determining that the search of his vehicle was permissible pursuant to the automobile exception to the warrant requirement. The defendant argues that the information provided by the confidential informant was insufficient to support a finding of probable cause, and, thus, the evidence seized from his vehicle should have been suppressed as the fruit of an unlawful search. We disagree.

We begin with the well established principles governing the standard of review for a motion to suppress. "It is axiomatic that [u]nder the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citation

omitted; internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 717, 992 A.2d 1071 (2010).[7]

We next review the court's denial of the defendant's motion to suppress. "The [f]ourth [a]mendment to the United States constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures. Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Internal quotation marks omitted.) *State* v. *Johnson*, 286 Conn. 427, 434, 944 A.2d 297, cert. denied, 555 U.S 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008). One such exception is the automobile exception. In *Carroll* v. *United States*, 267 U.S. 132, 153, 155–56, 45 S. Ct. 280, 69 L. Ed. 543 (1925), the United States Supreme Court held that, due to the inherent mobility of vehicles, it is permissible under that exception to the warrant requirement of the fourth amendment to conduct a warrantless search of an automobile for criminal evidence or contraband so long as the search is supported by probable cause.

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . The determination of whether probable

---

[7] Here, the defendant's appeal is limited to a challenge of the court's legal conclusions. Thus, our review is de novo.

cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test. . . . Under the *Gates* test,[8] a court must examine all of the evidence relating to the issue of probable cause and, on the basis of that evidence, make a commonsense, practical determination of whether probable cause existed. . . . We have said that the question is whether there was a fair probability that the contraband was within the place to be searched." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 257 Conn. 216, 223, 777 A.2d 182 (2001). "Where . . . the police relied on information provided to them by an informant, an examination of the informant's reliability (or veracity) and the basis of his or her knowledge should be regarded as highly relevant in determining whether, under the 'totality of the circumstances,' probable cause existed." *State* v. *Orellana*, 89 Conn. App. 71, 81, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

Here, the record supports a finding that the confidential informant was reliable. First, the confidential informant was not anonymous. The fact that an informant's identity is known to police carries substantial weight in assessing reliability because "the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for the class A misdemeanor of falsely reporting an incident under General Statutes § [53a-180c], had the information supplied proved to be a fabrication." *State* v. *Barton*, 219 Conn. 529, 550–51, 594 A.2d 917 (1991). Furthermore, prior to this case Villegas had worked with the informant for approximately eight months, and they consulted in person on

[8] See *Illinois* v. *Gates*, 462 U.S. 213, 230–32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

multiple occasions. This is significant because it afforded Villegas the opportunity personally to examine the informant's demeanor and to make an informed determination regarding the informant's credibility. See *State* v. *Batts*, 281 Conn. 682, 704, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). The informant also had provided information leading to Villegas' observing the defendant engaging in prior street sales of narcotics.

The fact that the police were able to corroborate the informant's information further supports an inference that the informant was reliable. *State* v. *Smith*, supra, 257 Conn. 226 ("[p]olice investigation confirming details of [an] informant's report may establish that the informant obtained the information in a reliable way"). Here, the informant told Villegas that the defendant just had been released by the Bloomfield police after having been picked up on a domestic warrant, and Villegas immediately confirmed that fact with Hartford police. The informant also gave Villegas the description, location and license plate number of the vehicle, all of which were confirmed by Rinaldi before Villegas arrived at the scene. Corroboration of such specific and timely information supports a finding that the informant was reliable.

The record also shows that the informant had a basis of knowledge regarding his information sufficient to sustain a finding of probable cause. Our Supreme Court has stated that "the surest way to establish a basis of knowledge is by a showing that the informant is passing on what is to him first-hand information . . . [as] when a person indicates he has overheard the defendant planning or admitting criminal activity . . . ." (Internal quotation marks omitted.) *State* v. *Johnson*, supra, 286 Conn. 440. Here, the informant reported to Villegas that his or her information came directly from a conversation he or she had with the defendant prior to calling

Villegas. The informant's basis of knowledge was known.

On the basis of the record, we conclude that the totality of the circumstances suggests that the police had probable cause to conduct a warrantless search of the defendant's vehicle. In light of the detailed information provided by the informant, which was corroborated by the police, the informant's basis of knowledge regarding the information, and the fact that Villegas knew and had worked with the informant in the past, there was probable cause to believe that contraband would be found in the defendant's vehicle. Accordingly, we conclude that the court properly held that the search of the defendant's vehicle was constitutionally permissible pursuant to the automobile exception to the warrant requirement.

II

The defendant next claims that the consent he gave to search his vehicle was invalid because it was obtained as the result of an unlawful detention. Specifically, the defendant argues that his being placed in handcuffs amounted to a de facto arrest that was not supported by probable cause, and, thus, his consent should be invalidated as a fruit of an unlawful detention. We conclude that, because the automobile exception to the warrant requirement justified the search of the defendant's vehicle, the issue of consent need not be addressed.

"[The] . . . four recognized situations where a warrantless search of a car may lead to the conclusion that such a search was reasonable under the United States or [Connecticut constitution] . . . are: (1) it was made incident to a lawful arrest; (2) it was conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) it was based upon consent; *or* (4) it was conducted

pursuant to an inventory of the car's contents incident to impounding the car." (Emphasis added; internal quotation marks omitted.) *State* v. *Wilson*, 111 Conn. App. 614, 622–23, 960 A.2d 1056 (2008), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009). Only one of these exceptions must be satisfied in order to conform to the mandates of the fourth amendment. As we held in part I of this opinion, the search of the defendant's vehicle was supported by probable cause. The warrantless search of the defendant's vehicle and the seizure of the items found inside the trunk was constitutionally valid pursuant to the automobile exception, and, thus, the court properly denied the defendant's motion to suppress. Accordingly, we need not consider the applicability of other exceptions to the warrant requirement.[9] See id., 626.

## III

Finally, the defendant claims that the evidence obtained from the search should have been suppressed because it was an inadmissible fruit of a *Miranda* violation. See *United States* v. *Patane*, 542 U.S. 630, 633–34, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004). The defendant asks this court to afford greater rights under article first, § 8, of the Connecticut constitution than are afforded under the federal constitution and to hold that physical

[9] The defendant argues that we must consider the issue of consent because the police testified that the search of the defendant's vehicle was based *solely* on consent, and, thus, any alternative grounds to justify the search are irrelevant. First, the defendant's claim is factually inaccurate. Although Villegas stated that he did not obtain a warrant to search the vehicle because the defendant gave his consent, nothing in the record indicates that Villegas believed that the search was not justified pursuant to probable cause.

Furthermore, even if Villegas did base his search solely on the defendant's consent, his subjective intent is irrelevant. It is well established that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' . . . The officer's subjective motivation is irrelevant." (Citation omitted.) *Brigham City* v. *Stuart*, 547 U.S. 398, 404, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006).

evidence seized as the result of a *Miranda* violation should be inadmissible in court.

"As a general principle, the exclusionary rule bars the government from introducing at trial evidence obtained in violation of the fourth amendment to the United States constitution." (Internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 72, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). This rule "extends to evidence that is merely derivative of . . . unlawful [police] conduct, or what is known as the fruit of the poisonous tree." (Internal quotation marks omitted.) Id. Our Supreme Court has held that, when adjudicating the issue of fruit of the poisonous tree, the question is "whether, granting establishment of the primary illegality, the evidence to which the objection is made has been come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable . . . ." (Internal quotation marks omitted.) Id., 73.

Even if we were to assume that the defendant's *Miranda* rights were violated and that the exclusionary rule applies to physical evidence seized as the result of a *Miranda* violation, his claim would still fail. As we stated in part I of this opinion, the police had probable cause to search the defendant's vehicle before they questioned him. The only information conceivably gained through the use of the postdetention questioning was confirmation of the defendant's ownership of the vehicle and, arguably, consent to search it. The defendant's consent to the search of his vehicle and his admission of ownership, however, added nothing to the finding of reasonableness; the police already had a constitutionally permissible basis to search the vehicle, probable cause, before any questioning occurred. Accordingly, the evidence was obtained by means of a

constitutionally permissible search, not by an exploitation of a *Miranda* violation. The search, thus, could not have been the fruit of a *Miranda* violation.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] We, by no means, suggest that there was, on the facts of this case, custodial interrogation such that the duty to give *Miranda* warnings was triggered, nor do we discuss the effect of *Patane* on this jurisdiction's law of criminal procedure. On the facts of this case, these issues need not be addressed.