STATE OF CONNECTICUT *v*. DAVID S. HECK
(AC 31790)

DiPentima, C. J., and Harper and Pelligrino, Js.

Argued January 10—officially released May 17, 2011

*Daniel J. Foster*, special public defender, for the appellant (defendant).

*Nancy L. Walker*, special duty assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and, *Christopher Parakilas*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, David S. Heck, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), larceny in the second degree in violation of General Statutes § 53a-123 (a) (2) and criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (5). On appeal, the defendant claims that (1) the trial court improperly admitted evidence of two burglaries that occurred in New Hampshire, (2) there was insufficient evidence to support his conviction, (3) the court improperly admitted evidence obtained from the defendant's global positioning system device (GPS device) in his rented pickup truck and (4) the court improperly admitted statements made by the defendant while in custody in New Hampshire. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the overnight hours of August 29, 2007, a burglary was committed at the town hall in Suffield. Prior to leaving work that evening, the Suffield tax collector, Christine Lucia, placed $6367.53 into a locked safe kept within her office. The burglar entered the building, which did not have an alarm system, through a basement storm window that had been pried off its track and dislodged. Once inside, the perpetrator broke open the door to the tax office, pried open the cash register and safe, and left with both cash and checks. During the burglary, the perpetrator rifled through various cabinets, desks and papers in the office, causing considerable property damage of approximately $3449.

There were no eyewitnesses or physical evidence at the scene of the crime that connected the defendant to the burglary.

On September 7, 2007, Christopher Burns, a detective with the Connecticut state police, received a telephone call from police officers in Hillsborough, New Hampshire, stating that they had apprehended the defendant for the burglary of two town halls in New Hampshire. At around 4 a.m. that morning, police in Hillsborough had received a telephone call concerning the defendant's rented pickup truck, which was parked in a driveway on Park Place in Hillsborough. David Roarick, a captain with the Hillsborough police department, arrived at the scene two minutes later to investigate. As he approached, he saw a 2007 Dodge pickup truck with a Massachusetts license plate in the driveway with a person sitting in the passenger seat. He saw someone run from across the street toward the property where the truck was parked, and then walk behind the house into a wooded area. Roarick called police dispatch, who reported that the truck was registered to Carmac, Inc. He then approached the vehicle and spoke to the passenger, Justin Douglas, who informed Roarick that the driver was visiting a friend nearby but that Douglas did not know the driver's name or where he had gone. Because Douglas' answers were evasive and Roarick believed that the truck may have been stolen, he asked Douglas to exit the vehicle.

After Douglas exited the vehicle, Roarick noticed a GPS device on the dashboard of the truck. In an attempt to determine the location of the missing driver, Roarick pressed the "recent entry" button on the device to scroll through the recently entered addresses. Among the first addresses displayed were those of the Hillsborough and

Windsor town halls, which had been burglarized.[1] He also found a driver's license and business card in the center console with the defendant's name on it, although he did not know if they belonged to the driver of the vehicle. He attempted to telephone the defendant at the number on his business card, and left a message on his voicemail after the defendant did not answer.

At that point, Michael Martin, a Henniker, New Hampshire police officer, arrived on the scene and walked over to the Hillsborough town hall to investigate, and determined that it had been burglarized. Eventually, Douglas provided to Roarick the number for the defendant's cellular telephone. The defendant failed to answer when Roarick called from his own telephone, however, when Roarick called him using Douglas' telephone, the defendant answered. Roarick informed the defendant that he knew about the burglary at the Hillsborough town hall and that he should turn himself in to the police. The defendant subsequently turned himself in and was placed under arrest. He admitted that he had burglarized the town halls in Hillsborough and Windsor because he had lost his house and was having financial difficulties.

After a jury trial on the Suffield burglary, the defendant was found guilty, as charged, of burglary in the third degree in violation of § 53a-103 (a), larceny in the second degree in violation of § 53a-123 (a) (2) and criminal mischief in the first degree in violation of § 53a-115 (a) (5). On September 9, 2009, the court sentenced the defendant to a total effective term of ten years incarceration, suspended after nine years, with five years probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

[1] After a search warrant for the truck and its contents was executed by the Hillsborough police, Burns scrolled through the recently searched addresses that were saved in the defendant's GPS device. The address for the town hall in Suffield came up as one of the recently searched addresses.

## I

The defendant's first claim is that the trial court abused its discretion by admitting evidence of two separate burglaries that occurred in New Hampshire. We disagree.

The following procedural history is relevant to our discussion. On April 28, 2009, the defendant filed a motion in limine seeking to exclude at trial any evidence of the New Hampshire town hall burglaries because all charges against the defendant in New Hampshire had been dismissed. The state argued that the evidence was admissible to prove the existence of a larger plan or scheme and that the burglaries were sufficiently distinctive and unique as to be like a signature. On May 6, 2009, the court denied the defendant's motion in limine. At trial, Roarick; Darren Remillard, a Hillsborough police officer; and Thomas Forsley, a New Hampshire state trooper, testified about the New Hampshire town hall burglaries.

First, we set forth our standard of review. "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result. . . .

"It is well settled that evidence of prior misconduct is admissible for the purpose of showing knowledge, intent, motive, and common scheme or design, but is not admissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Uncharged

misconduct evidence relates to a collateral, uncharged crime and does not prove the commission of the principal crime with which the defendant is charged. . . .

"To admit evidence of prior misconduct properly, two tests must be met. The evidence (1) must be material and relevant, and (2) its probative value must outweigh the prejudicial effect of the evidence. . . . Evidence is material where it is offered to prove a fact directly in issue or a fact probative of a matter in issue. . . . Relevant evidence is defined in Connecticut Code of Evidence, § 4-1, as evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. The commentary to that section makes it clear that there are two separate components of relevant evidence at common law, probative value and materiality. Evidence is relevant if it tends to support the conclusion even to a slight degree. . . . Materiality is determined by the pleadings (or information) and the applicable substantive law. . . .

"Our Supreme Court has identified two categories of common scheme or plan cases. . . . In the first category, which consists of what most accurately may be described as true common scheme or plan cases, the nature of the charged and uncharged crimes combined with connecting evidence, if any, gives rise to a permissive inference that an overall scheme or plan existed in the defendant's mind, and that the crimes were executed in furtherance of that plan. In the second category of cases, which consists of what most accurately may be described as signature cases, the charged and uncharged crimes appear to be separate and discrete criminal acts, but the method of commission exhibits the existence of a modus operandi, logo, or signature,

which, when considered in combination with other factors, such as the proximity of time and place of commission, gives rise to a permissive inference that the crimes were executed in furtherance of an overall common scheme or plan." (Citations omitted; internal quotation marks omitted.) *State* v. *Dougherty*, 123 Conn. App. 872, 877–78, 3 A.3d 208, cert. denied, 299 Conn. 901, 10 A.3d 521 (2010).

Here, the charged and uncharged crimes occurred in distinct locations and during separate criminal acts committed by the defendant. The defendant's GPS device contained the recent locations of town halls in Suffield, and in Hillsborough and Windsor, New Hampshire, all of which had been burglarized. The trial court permitted evidence concerning the robberies that the defendant admitted he was involved with in Hillsborough and Windsor, New Hampshire. The crimes at each location shared distinct and unique features which give rise to an inference that the crimes were executed in furtherance of an overall common scheme. All three burglaries occurred during the evening hours in small town halls that did not have burglar alarms. In each case, the intruder entered through the basement and caused damage throughout the building as he broke into several offices and broke open a safe in search of cash.

We cannot conclude that it was an abuse of discretion on the part of the trial court to find that the method of carrying out these crimes exhibited a modus operandi or signature, and were executed in furtherance of an overall common scheme. The crimes all occurred within an eight day period and within a reasonable driving distance of each other and the defendant's home. See *State* v. *Greene*, 209 Conn. 458, 465, 551 A.2d 1231 (1988) ("robberies were committed . . . at similar times of day within three days of each other and in the same vicinity").

Finally, we disagree with the defendant's assertion that the introduction of this evidence at trial was more prejudicial than probative. "The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *McClelland*, 113 Conn. App. 142, 153, 965 A.2d 586, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). There is no evidence in the record that the New Hampshire burglaries had a tendency to improperly arouse the emotions of the jury. Further, the court issued limiting instructions during the presentation of evidence and its instructional charge to the jury. We, therefore, cannot conclude that the court abused its discretion in determining that the probative value outweighed the prejudicial effect of presenting evidence to the jury of the uncharged misconduct.[2]

## II

The defendant's next claim is that the trial court improperly admitted evidence obtained from the GPS device in his rented pickup truck. We disagree.

The following additional facts are relevant to this claim. Prior to trial, the defendant moved to suppress evidence garnered from the search of his rental vehicle. After an evidentiary hearing on the defendant's motion to suppress, the court set forth orally its findings of fact. According to the court, Roarick approached the vehicle, which was parked in a private driveway and was occupied by a passenger, Douglas, who was evasive when Roarick questioned him. After Douglas exited the

---

[2] On the basis of his claim that evidence of the New Hampshire burglaries should not have been presented to the jury, the defendant argues that the remaining evidence is insufficient to support his conviction. The defendant has provided no law or legal analysis to support his claim. We are not required to review claims that are inadequately briefed. See *State* v. *Barksdale*, 79 Conn. App. 126, 136 n.9, 829 A.2d 911 (2003).

vehicle, Roarick looked inside of it and noticed a GPS device, which he began to operate in an attempt to locate the driver of the vehicle. The defendant was located approximately two hours later, after Douglas gave Roarick the defendant's cellular telephone number and Roarick called using Douglas' telephone. The defendant informed Roarick as to his location and was taken into custody.

The defendant was taken to the Hillsborough police station to be questioned by Remillard, who began by reading him his *Miranda*[3] rights. The defendant answered affirmatively that he understood his rights. After being questioned about the Hillsborough burglary, the defendant confessed to stealing money from the town hall and agreed to show the police where the money was hidden in the woods behind the town hall. The interview was terminated, and the defendant was brought back to the crime scene. After returning to the police station, the defendant offered details about the burglary, including how he and Douglas had entered the building and broken into the safe. The initial interview lasted approximately thirty to forty minutes, and the second interview, conducted after they arrived back at the police station, lasted approximately one hour. Later, the defendant was questioned in the same interview room by Forsley. During that interview, which occurred in two parts, the defendant was read his *Miranda* rights twice, using two separate state police forms that were signed by both Forsley and the defendant. Ultimately, the defendant also confessed to the burglary of the Windsor town hall.

We begin with our well established standard of review for a motion to suppress. "It is axiomatic that [u]nder the exclusionary rule, evidence must be suppressed if

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

it is found to be the fruit of prior police illegality. . . . As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Duffus*, 125 Conn. App. 17, 24–25, 6 A.3d 167 (2010), cert. denied, 300 Conn. 903, 12 A.3d 572 (2011).

In light of the evidence and pleadings in the record, we agree with the court's well reasoned finding, in denying the defendant's motion to suppress, that the fruits of the search by the police of the defendant's truck would have been inevitably discovered.[4] "Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. . . . To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation.

---

[4] The court chose not to make a finding as to whether the defendant had a reasonable expectation of privacy in his vehicle. We, similarly, are not required to address that issue.

. . . The inevitable discovery rule applies in a situation in which . . . the police would have legally discovered the evidence eventually." (Citations omitted; internal quotation marks omitted.) *State* v. *Vallejo*, 102 Conn. App. 628, 640, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007). Here, the police would have discovered the GPS device through the inventory conducted in accordance with the police department policy. See id.

The jury reasonably could have concluded that Roarick arrived after a Hillsborough resident had notified the police of a suspicious truck in his driveway. The whereabouts of the truck's driver were unknown, the passenger of the truck refused to provide any information or explanation as to what he was doing, and Roarick had seen another individual, the defendant, wearing a hooded garment, run behind a house near where the truck was located. Upon further investigation, Roarick determined that the truck was registered to Carmac, Inc. Based on the foregoing information, Roarick reasonably believed that the truck had been stolen, and the defendant eventually was captured without the use of any information provided through Roarick's search of the truck.

Additionally, because Roarick believed that the truck was stolen, it would have been impounded and a subsequent inventory would have revealed the same GPS information at that time. The Hillsborough town hall custodian, who usually arrived for work at approximately 7 a.m., would have discovered that the building had been burglarized and notified the police.[5] Inevitably, the police would have connected the proximity of the defendant and the impounded vehicle to the Hillsborough town hall burglary. Therefore, the defendant's connection to the New Hampshire town hall burglaries

---

[5] The defendant was taken into custody at approximately 6:25 a.m.

would have eventually been discovered and that discovery would have resulted in a lawful search of the defendant's truck and seizure of evidence found inside the truck. Accordingly, we conclude that the court properly denied the defendant's motion to suppress all evidence obtained in its search of the GPS device found in the defendant's truck.

### III

The defendant's final claim is that the trial court improperly admitted evidence of a confession obtained in New Hampshire in violation of New Hampshire law. We disagree. As we previously stated, under the applicable standard of review, we uphold factual findings unless they are clearly erroneous.

During the defendant's interrogation, both Remillard and Forsley satisfied the requirements of *Miranda* in "fully equivalent language." The defendant was alert, understood English, responded accordingly and waived those rights expressly and through his conduct. Pursuant to Connecticut and federal law, based on the facts in this case, the state adequately demonstrated to the court that the defendant expressly and, through his conduct, waived his fifth amendment right to remain silent. We disagree with the defendant's analysis that, pursuant to *State* v. *Boyd*, 295 Conn. 707, 992 A.2d 1071 (2010), New Hampshire law controls this case.

In *Boyd*, our Supreme Court held that evidence obtained in a legal search in another state can be admitted in a Connecticut court even though the search, if it had occurred in Connecticut, would have violated the Connecticut constitution. Id., 724. Because the exclusionary rule's "prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the [f]ourth [a]mendment against unreasonable searches and seizures . . . [a]pplication of the rule is thus appropriate in circumstances in which this

purpose is likely to be furthered." (Internal quotation marks omitted.) Id., 729. Moreover, the court in *Boyd* cited with approval several cases which hold that there is no requirement that evidence obtained in another state be excluded in the forum state merely because it would be inadmissible if the prosecution were in that other state. See id., 728 n.12. Therefore, because the evidence in question would have been admissible in Connecticut, the court's analysis in *Boyd* does not apply in this case. The trial court found that the evidence was admissible in Connecticut, and the fact that it may have been inadmissible in New Hampshire did not preclude admissibility in this state. Thus, we conclude that our Supreme Court's analysis in *Boyd* does not avail the defendant of the benefit of New Hampshire law.[6]

The record shows that the defendant, after being read his *Miranda* rights, acknowledged that he understood his rights and voluntarily waived them by speaking to the police. We, therefore, conclude that the court properly denied the defendant's motion to suppress his statements.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Furthermore, although the defendant claims that the trial court in New Hampshire previously held that the state had not met its burden of showing that the defendant waived his *Miranda* rights when it prosecuted him for

the Hillsborough and Windsor burglaries, he has not provided this court with a copy of it, as is required pursuant to Practice Book § 67-9.