******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID HECK *v.* COMMISSIONER
OF CORRECTION
(AC 38246)

DiPentima, C. J., and Keller and Bear, Js.

*Submitted on briefs November 17, 2016—officially released February 7, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Walter C. Bansley IV* filed a brief for the appellant
(petitioner).

*Gail P. Hardy*, state's attorney, *Sarah Hanna*, assistant state's attorney, and *Lisa Maria Proscino*, former
special deputy assistant state's attorney, filed a brief
for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, David Heck, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly concluded that counsel who represented him in two criminal trials involving town hall burglaries provided ineffective assistance. We affirm the judgment of the habeas court.

On June 25, 2009, in connection with a burglary of the Suffield town hall, in Docket No. CR-08-0148136-S (Enfield case), a jury found the petitioner guilty of burglary in the third degree in violation of General Statutes § 53a-103 (a), criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (5), and larceny in the second degree in violation of General Statutes § 53a-123 (a) (2). The court, *Dubay, J.*, sentenced the petitioner to a total effective term of ten years incarceration, suspended after nine years, with five years of probation.

On November 18, 2010, in connection with a burglary of the Ashford town hall, in Docket No. CR-08-0136011-S (Danielson case), a jury found the petitioner guilty of burglary in the third degree in violation of § 53a-103 (a), criminal mischief in the first degree in violation of § 53a-115 (a) (5), and attempt to commit larceny in the sixth degree in violation of General Statutes §§ 53a-49 and 53a-125b. The court, *Swords, J.*, sentenced the petitioner to a total effective term of seven years and three months incarceration, followed by three years of special parole, consecutive to his sentence in the Enfield case.

On direct appeal, this court affirmed the petitioner's conviction in the Enfield case. *State* v. *Heck*, 128 Conn. App. 633, 635, 18 A.3d 673, cert. denied, 301 Conn. 935, 23 A.3d 728 (2011). The petitioner did not appeal from the judgment of conviction in the Danielson case.

On December 16, 2014, the petitioner filed an amended petition for a writ of habeas corpus. Relevant to the present appeal, in count one, the petitioner alleged ineffective assistance of trial counsel, Jean-Paul Garcia Lewis, in connection with his convictions in both the Enfield and Danielson cases. He alleged that trial counsel had been ineffective in failing to move to suppress certain evidence, namely, a global positioning system (GPS) device, that had been seized from a vehicle that the defendant was using at the time that he was arrested by police in Hillsborough, New Hampshire, for having burglarized the town hall in that municipality, and in failing to alert the trial court that a New Hampshire court had ordered that the GPS device be returned to him.[1] The GPS device was transferred to the state's attorneys in Enfield and Danielson, and the state utilized it in the presence of the jury during both of the

petitioner's criminal trials. Because the GPS device reflected that the Hillsborough, Suffield, and Ashford town halls were among several addresses that recently had been accessed on it, the state used information stored on the GPS device as evidence that the petitioner was implicated in the burglaries of the Suffield and Ashford town halls.[2] In characterizing the nature of the defendant's claim, the habeas court aptly stated that, although trial counsel unsuccessfully had moved to suppress the GPS device on the ground that it had been illegally seized, the petitioner claimed that counsel "was professionally deficient for failing to include as an alternative ground for exclusion the purportedly illegal transfer of the GPS device to Connecticut despite the assumed lawfulness of the seizure of the [GPS device] by New Hampshire police." More precisely, the petitioner criticized the performance of trial counsel in failing to argue that the physical transfer of the GPS device to Connecticut and its subsequent use at his two trials were constitutionally impermissible because once the petitioner's burglary case in New Hampshire was annulled under New Hampshire law sometime after November 12, 2008, any police and court records contained in his case were not disclosable to the public, including Connecticut law enforcement officials. The petitioner argued that he was prejudiced by the use of the GPS device at both trials.[3] Following a trial held on March 17, 2015, the habeas court, *Sferrazza, J.*, denied the petition for a writ of habeas corpus. Judge Sferrazza subsequently granted the petition for certification to appeal.

In setting forth its findings of fact, the habeas court adopted the summary of facts underlying the Enfield case that were set forth by this court in *State* v. *Heck*, supra, 128 Conn. App. 635–37. In relevant part, those facts are as follows: "During the overnight hours of August 29, 2007, a burglary was committed at the town hall in Suffield. . . . The burglar entered the building, which did not have an alarm system, through a basement storm window that had been pried off its track and dislodged. Once inside, the perpetrator broke open the door to the tax office, pried open the cash register and safe, and left with both cash and checks. During the burglary, the perpetrator rifled through various cabinets, desks and papers in the office, causing considerable property damage . . . .

"On September 7, 2007, Christopher Burns, a detective with the Connecticut state police, received a telephone call from police officers in Hillsborough, New Hampshire, stating that they had apprehended the [petitioner] for the burglary of two town halls in New Hampshire. At around 4 a.m. that morning, police in Hillsborough had received a telephone call concerning the [petitioner's] rented pickup truck, which was parked in a driveway . . . in Hillsborough. David Roarick, a captain with the Hillsborough Police Department

arrived at the scene two minutes later to investigate. As he approached, he saw a 2007 Dodge pickup truck with a Massachusetts license plate in the driveway with a person sitting in the passenger seat. He saw someone run from across the street toward the property where the truck was parked and then walk behind the house into a wooded area. Roarick called police dispatch, who reported that the truck was registered to Carmac, Inc. He then approached the vehicle and spoke to the passenger, Justin Douglas, who informed Roarick that the driver was visiting a friend nearby but that Douglas did not know the driver's name or where he had gone. Because Douglas' answers were evasive and Roarick believed that the truck may have been stolen, he asked Douglas to exit the vehicle.

"After Douglas exited the vehicle, Roarick noticed a GPS device on the dashboard of the truck. In an attempt to determine the location of the missing driver, Roarick pressed the recent entry button on the [GPS] device to scroll through the recently entered addresses. Among the first addresses displayed were those of the Hillsborough and Windsor, New Hampshire town halls, which had been burglarized. He also found a driver's license and business card in the center console with the [petitioner's] name on it, although he did not know if they belonged to the driver of the vehicle. . . . Michael Martin, a Henniker, New Hampshire police officer, arrived on the scene and walked over to the Hillsborough town hall to investigate and determined that it had been burglarized. Eventually, Douglas provided to Roarick the number for the [petitioner's] cellular telephone. The [petitioner] failed to answer when Roarick called him from his own telephone, however, when Roarick called him using Douglas' telephone, the [petitioner] answered. Roarick informed the [petitioner] that he knew about the burglary at the Hillsborough town hall and that he should turn himself in to the police. The [petitioner] subsequently turned himself in and was placed under arrest. He admitted that he had burglarized the town halls in Hillsborough and Windsor[4] because he had lost his house and was having financial difficulties."[5] (Footnotes altered; internal quotation marks omitted.)

The habeas court went on to find that, after Burns received the call from police officers in Hillsborough on September 7, 2007, he drove that day to New Hampshire. At that time, he "personally reviewed each of the many destinations entered into the [GPS] device, and he recorded the same in a written document at that time. . . . [T]he Suffield and Ashford town hall locations were among the destinations entered into the system previously."

The habeas court indicated in its memorandum of decision that "in order to clarify the petitioner's claim of ineffective assistance, the following chronology is

important. . . . [T]he New Hampshire police seized the [GPS device] on September 7, 2007, and the petitioner was arrested for a New Hampshire burglary shortly thereafter. Before his indictment in New Hampshire, the petitioner's defense counsel in that case, Attorney Robin Melone, filed a blanket motion for the return to the petitioner of all tangible items seized by the New Hampshire police. That motion never specifically referenced the [GPS device].

"On November 19, 2007, a New Hampshire court ordered the return of several other seized articles, which the petitioner retrieved, but not the [GPS device]. On June 19, 2008, Judge [Kathleen A. McGuire] granted a motion to exclude certain evidence against the petitioner but denied suppression of the [GPS device]. The New Hampshire prosecutor nolled the charges against the petitioner on June 19, 2008.[6]

"Because of the similarity of the alleged burglary in New Hampshire to certain burglaries in Connecticut and because of information garnered from the GPS device as to the travels of the petitioner's rented truck, on September 5, 2008, the state's attorney's offices for G.A. 13 and G.A. 11 requested that New Hampshire authorities temporarily transfer the [GPS device] to Connecticut law enforcement for possible prosecution of criminal charges for offenses committed in this state. On September 11, 2008, an assistant county attorney in New Hampshire moved for the New Hampshire court to approve the transfer. Attorney Melone opposed that request and, on November 12, 2008, moved to compel the return of the [GPS] device to the petitioner.

"No evidence was adduced at the habeas hearing regarding any rulings by the New Hampshire court on these motions. However, the New Hampshire authorities did, in fact, transfer possession of the [GPS device] to the Connecticut prosecutors for use at the petitioner's criminal trials in this state." (Footnote added.)

As stated previously, prior to the commencement of both trials, trial counsel unsuccessfully moved to suppress use of the GPS device on the basis of the allegedly illegal seizure of that item by the New Hampshire police. The petitioner alleges in the present habeas petition that trial counsel was deficient in failing to include as an alternative ground for exclusion the purportedly illegal transfer of the GPS device to Connecticut, despite the assumed lawfulness of its seizure by the New Hampshire police. The petitioner argues that the physical transfer of the GPS device to Connecticut and its subsequent use at his two trials were constitutionally impermissible because once the petitioner's burglary case in New Hampshire was annulled under New Hampshire law sometime after November 12, 2008, any police and court records contained in his case were not disclosable to the public, including to Connecticut law enforcement officials.

Our standard of review is well established. "[T]he right to counsel is the right to the effective assistance of counsel. . . . There are two components of a claim of ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 424, 589 A.2d 1214 (1991). "A failure to establish either prong will be fatal to a claim of ineffectiveness of counsel." *Alterisi* v. *Commissioner of Correction*, 145 Conn. App. 218, 223, 77 A.3d 748, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct . . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 577, 941 A.2d 248 (2008).

"The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a [petitioner] received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 597–98, 940 A.2d 789 (2008).

After thoroughly examining the record on appeal and the briefs and arguments of the parties, we agree with the habeas court that the petitioner's claim fails for several reasons. The petitioner was not prejudiced by trial counsel's failure to move to suppress on the basis of the transfer of the GPS device. This is because it was Burns' review of the contents of the GPS device's record of past destinations, rather than any physical attributes of the GPS device itself, that linked the petitioner to the burglaries of the Suffield and Ashford town halls. The incriminatory evidence related to the GPS device was admitted in the form of Burns' testimony. Burns testified at both criminal trials that in response to notification by law enforcement officials in New Hampshire of the GPS device entries involving Connecticut municipal building addresses, he traveled to Hillsborough, New Hampshire, on September 7, 2007, the

same day the petitioner was arrested. When Burns arrived in Hillsborough, he personally reviewed each of the many destinations entered into the GPS device and recorded the same in a written document at that time.[7] He testified that he recalled that the Suffield and Ashford town hall locations were among the destinations entered into the GPS device previously. This information was obtained before the petitioner requested the return of the GPS device and months before his New Hampshire arrest records were sealed by the New Hampshire court.

Moreover, the seizure of the GPS device and search of its entries was held to be constitutionally valid by both the New Hampshire and Connecticut criminal courts, and consequently, the motions to suppress such information were denied. Therefore, Burns' testimony as to his observations and recording of that information on September 7, 2007, was admissible against the petitioner in Connecticut despite the eventual sealing of his New Hampshire file at a later date, as his testimony was based on personal knowledge and not based on his review of erased records.

"[W]e have recognized the legitimacy of the distinction between testimony based on independent personal knowledge and testimony based on inadmissible records, permitting the former while barring the latter." *State* v. *Morowitz*, 200 Conn. 440, 450, 512 A.2d 175 (1986). An erasure "statute does not and cannot insulate [an individual] from the consequences of his prior *actions*." (Emphasis in original.) Id., 451; see also *Rado* v. *Board of Education*, 216 Conn. 541, 550, 583 A.2d 102 (1990) (erasure act not intended to obliterate memory). The petitioner has not demonstrated that Connecticut law enforcement and prosecutors would have been constrained by any New Hampshire court order or New Hampshire's annulment statute when investigating and pursuing a criminal case in Connecticut. Having acquired the inculpatory information from the GPS device lawfully under Connecticut law, Burns' testimony and his display of the device to the jurors was clearly proper. Even assuming some violation of the law by New Hampshire authorities, where the seizure and search of evidence satisfied the laws of the forum jurisdiction, Connecticut, it is not subject to exclusion based on a violation of the law by the procurement jurisdiction, New Hampshire. See *State* v. *Boyd*, 295 Conn. 707, 727–28, 992 A.2d 1071 (2010), cert. denied, 562 U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011).

The petitioner's claim is based on trial counsel's failure to move to exclude evidence obtained from the GPS device on the ground that New Hampshire authorities may have breached New Hampshire's annulment statute in relinquishing the GPS device to Connecticut law enforcement officials. The habeas court correctly concluded that this was not a legally viable ground. For

purposes of the petitioner's fourth amendment claim, the material issue is whether the police and prosecutors in Connecticut violated applicable Connecticut law. See id. Because the petitioner has not set forth a legally viable ground on which to support a motion to suppress regarding the transfer of the GPS device, he has failed to demonstrate that trial counsel acted unreasonably in failing to file such a motion.

As the petitioner failed to demonstrate that a motion to suppress contesting the transfer of the GPS device would have been successful, the habeas court determined that he failed to demonstrate prejudice related to the failure to move to suppress on this ground. Without such a showing, there was no reasonable probability that the result of his trial would have been different. In addition, proof of prejudice is lacking because the petitioner acknowledges that even if the GPS device would have been suppressed, none of Burns' damaging testimony would have been excluded concerning what his search of the petitioner's GPS device and documentation in New Hampshire revealed—namely, recent address entries that matched the locations of the town hall burglaries in Suffield and Ashford, as well as addresses for burglary locations in New Hampshire, two similar burglaries that the petitioner had admitted committing.

Accordingly, because the petitioner has not demonstrated that he had a viable fourth amendment claim, the habeas court, in denying the petition, properly determined that the petitioner failed to meet his burden of proving that his trial counsel was ineffective in failing to raise such a claim challenging the transfer of the GPS device from New Hampshire to Connecticut.

The judgment is affirmed.

[1] The petitioner alleged in count two of his amended petition that his right to be free from unreasonable searches and seizures as afforded by the federal and state constitutions was violated when Connecticut state officials "seized [his GPS device] from him in New Hampshire, without a warrant and in an unreasonable manner" and then "unreasonably seized and then improperly used [the GPS device] against him at his trial." In count three, the petitioner alleged that his due process rights were violated when Connecticut state officials "searched and seized [his GPS device] without a hearing or warrant" and "utilized [the GPS device] against him at trial, without property hearing or due process." Prior to trial, the habeas court dismissed the due process claims in the third count on the ground of procedural default, and, following trial, the habeas court denied the fourth amendment claim in the second count on the same ground. In the present appeal, the petitioner does not challenge these rulings.

[2] There was evidence that, pursuant to an agreement between the Hillsborough Police Department and the Suffield Police Department dated June 4, 2009, Detective Mark Sargent of the Suffield Police Department retrieved the GPS device before it was marked as an exhibit for identification in the Enfield case on June 25, 2009.

[3] The record reflects that the GPS device was not introduced as a full exhibit in either the Enfield or Danielson trials. During his direct examination by the state in both cases, however, Detective Christopher Burns of the Connecticut State Police utilized the GPS device in the presence of the jury to demonstrate the presence of the damning entries on it. This evidence was cumulative of Burns' personal recollection and written notes of his observations on September 7, 2007, in Hillsborough. The circumstantial evidence that the GPS device contained the petitioner's requests for direc-

tions to the Suffield and Ashford town halls at or about particular times and dates tended to prove his guilt at both trials.

[4] There was evidence that the burglary of the Windsor town hall was discovered by New Hampshire State Trooper Thomas Forsley after he learned that the address of the Windsor town hall was an entry on the GPS discovered in the truck.

[5] Similar evidence of the two New Hampshire burglaries was admitted in the Enfield and Danielson cases as uncharged misconduct. In the Enfield case, it was used to demonstrate the petitioner's intent, the identity of the person who committed the crime, a motive for the crime, a common plan or scheme, a system of criminal activity, and to corroborate crucial prosecution testimony. In the Danielson case, it was used to demonstrate the petitioner's intent, motive, common plan or scheme, and to corroborate crucial prosecution testimony.

[6] The habeas court noted that the petitioner secured an annulment of his arrest records following the nolle entered by the New Hampshire prosecutor sometime after November 12, 2008, and that an "annulment" under New Hampshire law is akin to Connecticut's statutory erasure procedure, embodied in General Statutes § 54-142a, in that an annulment imposes a duty of nondisclosure to the public of police and court records.

[7] At the request of the petitioner, Burns' documentation of the locations recorded on the GPS device was admitted as a full exhibit in the Danielson case.

———————————————